# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| WANDA L. SKIPPER, | CASE NO. 1:21-CV-01237-JRA |
| Plaintiff, | JUDGE JOHN R. ADAMS |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

## INTRODUCTION

Plaintiff Wanda L. Skipper filed a Complaint against the Commissioner of Social Security (Commissioner) seeking judicial review of the Commissioner's decision denying disability insurance benefits (DIB) and supplemental security income (SSI). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On June 23, 2021, pursuant to Local Rule 72.2, this matter was referred to me for preparation of a Report and Recommendation. (Non-document entry of June 23, 2021). Following review, and for the reasons stated below, I recommend the District Court **REVERSE** the Commissioner's decision and **REMAND** the case for additional proceedings consistent with this recommendation.

## PROCEDURAL BACKGROUND

Ms. Skipper filed for DIB and SSI on July 30, 2018, alleging a disability onset date of October 1, 2017. (Tr. 71, 224, 230). The claims were denied initially and on reconsideration. (Tr.

1

58, 68, 79, 88). She then requested a hearing before an Administrative Law Judge. (Tr. 128-30). Ms. Skipper, (represented by counsel), and a vocational expert (VE) testified at a hearing before the ALJ on April 2, 2020. (Tr. 35-43).

On April 10, 2020, the ALJ issued a written decision finding Ms. Skipper not disabled. (Tr. 19-27). The Appeals Council denied Ms. Skipper's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 4-6; *see* 20 C.F.R. §§ 404.955, 404.981, 416.1455, and 416.1481). Ms. Skipper timely filed this action on June 23, 2021. (ECF #1).

FACTUAL BACKGROUND

## I.   PERSONAL AND VOCATIONAL EVIDENCE

Ms. Skipper was 50 years old at the time of her alleged onset date, and 53 years old at the time of the administrative hearing. (Tr. 49). Ms. Skipper completed high school. (Tr. 286). She worked full-time as a cashier at Big Lots but reduced her hours to part-time to accommodate her lumbar spine issues, and eventually stopped working. (Tr. 37, 285).

## II.   RELEVANT MEDICAL EVIDENCE

On January 2, 2018, Ms. Skipper presented to the emergency department with left sided back pain with intermittent spasms but not radiating pain, starting the night prior. (Tr. 397). She endorsed pain worse with movement and tenderness to palpation. (*Id.*). Ms. Skipper reported experiencing similar muscle spasms before. (*Id.*). Physical examination revealed upper left lumbar tenderness with spasm, but was otherwise normal, with full lower bilateral extremity strength and intact sensation. (Tr. 398). Though Ms. Skipper's blood pressure of 95/60 was somewhat low, she denied lightheadedness. (Tr. 399). Ms. Skipper received Toradol and Flexeril in the emergency

2

department and reported improvement. (*Id.*). The provider recommended Ms. Skipper follow up with her primary care physician and discharged her with a prescription for naproxen. (*Id.*).

On April 30, 2018, Ms. Skipper met with Hardeepak Shah, M.D., of Rockside MC (part of the Cleveland Clinic Foundation (CCF)) and complained of back pain. (Tr. 396). She reported suffering from back pain for years that recently worsened. (*Id.*). Ms. Skipper noted the pain was confined to her low back, without radiation, leg pain, or any incontinence. (*Id.*). On examination, Ms. Skipper displayed midline lumbar back pain, but no paravertebral tenderness to palpation, and her straight leg raise test was negative. (*Id.*). In addition to encouraging Ms. Skipper to lose weight, Dr. Shah recommended NSAIDs, stretching, and ice as needed for back pain. (*Id.*). He ordered lumbar X-rays that revealed spinal arthritis, for which Dr. Shah recommended anti-inflammatories, heat, and stretches. (Tr. 394, 396).

On September 12, 2018, after experiencing three days of lightheadedness Ms. Skipper saw Eric W. Boose, M.D., also of Rockside MC. (Tr. 389). The lightheadedness began when she started having a migraine that lasted for a few days. (*Id.*). Intermittently, she felt as though she would pass out, a sensation that lasted for a few seconds before dissipating. (*Id.*). After a normal physical examination, Dr. Boose ordered blood work to determine possible causes for Ms. Skipper's lightheadedness. (Tr. 389-90). Before leaving the office, Ms. Skipper denied discomfort, dizziness, lightheadedness, and weakness. (Tr. 390).

On October 3, 2019, Ms. Skipper met with Jacquelynn Shank, PA-C, of Rockside MC, to discuss her history of back pain and to complete disability paperwork. (Tr. 460). Ms. Skipper complained of a flare-up in back pain and felt that working four hours a day, four to five days a week, aggravated her symptoms. (*Id.*). Ms. Skipper characterized the pain as intermittent in nature,

3

provoked by walking and prolonged periods of standing. (*Id.*). She reported that Aleve and ibuprofen provided only mild symptom relief. (*Id.*). Ms. Skipper also endorsed right upper extremity weakness and numbness. (Tr. 462).

On physical examination, Ms. Skipper's lumbar spine showed decreased ranges of motion in extension and flexion, tenderness, and bony tenderness at L4 and L5. (Tr. 463). She had normal strength and reflexes, exhibited normal muscle tone, displayed normal coordination and gait, and the straight leg raise test was negative bilaterally. (*Id.*). PA Shank discussed pain management and epidural injections for potential sustained pain relief, but Ms. Skipper declined those options. (*Id.*). PA Shank recommended ice for localized tenderness; prescribed a Medrol dose pack, ibuprofen 600mg, and tizanidine; provided an intramuscular injection of Ketorolac; ordered a lumbar MRI; and referred Ms. Skipper for a physical therapy consultation. (Tr. 463-64, 467).

## III.  MEDICAL OPINIONS

State agency medical consultants reviewed Ms. Skipper's record at the initial and reconsideration levels. Timothy Budnik, D.O., opined Ms. Skipper can occasionally lift and carry twenty pounds, ten pounds frequently; can stand and/or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday; can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds; can occasionally stoop (bend at the waist) and crawl; and must avoid all exposure to hazards, such as dangerous machinery or unprotected heights. (Tr. 55-56, 64-66).

On reconsideration, Maria Congbalay, M.D., reviewed the record, opined the additional medical evidence remained consistent with and supported by the objective evidence in the file, and adopted Dr. Budnik's findings. (Tr. 77, 79, 86, 88).

On the same day that she provided treatment for Ms. Skipper's back pain (discussed *supra*), PA Shank completed a medical source statement. (Tr. 441-44). Brian Myers, M.D., also of Rockside MC, ascribed his name and signature to the medical source statement. (Tr. 444). PA Shank explained that Ms. Skipper has seen multiple providers at Rockside MC since February 19, 2008. (Tr. 441). In accordance with the instructions on the form, she listed all of Ms. Skipper's diagnoses for which the office has provided medical treatment, including lumbago, lateral epicondylitis, GERD, sinusitis, ear pain, right ankle injury, and lightheadedness. (*Id.*). PA Shank opined Ms. Skipper would be off task about ten percent of the workday and absent from work one to two days per month, and could maintain attention and concentration for more than two hours before requiring a break. (*Id.*). Additionally, PA Shank determined Ms. Skipper could frequently lift and carry less than ten pounds, occasionally lift but rarely carry ten pounds, rarely lift and never carry twenty pounds, and never lift or carry fifty pounds or more. (Tr. 442). PA Shank recognized the 2018 lumbar X-ray (and a 2008 MRI not part of the administrative record) as within normal limits, but made her conclusions based on her physical examination revealing vertebral tenderness, difficulty with extension and flexion of the lumbar spine, and no radiculopathy. (*Id.*).

PA Shank determined Ms. Skipper could sit for a total of eight hours in an eight-hour workday, could stand/walk for a total of two to three hours in an eight-hour workday, and would require a sit/stand option at-will. (*Id.*). She supported these conclusions with the same examination findings supporting her opinion as to lifting/carrying abilities. (*Id.*). She also determined Ms. Skipper could occasionally push and pull with the bilateral upper extremities, but only when the weight to be pushed or pulled was more than twenty pounds. (Tr. 443).

As to postural and environmental limitations, PA Shank concluded Ms. Skipper could occasionally climb stairs and ramps; occasionally climb ladders and scaffolds; occasionally balance, kneel, stoop, crouch, and crawl; and occasionally work around unprotected heights and moving mechanical parts. (Tr. 444).

## IV. ADMINISTRATIVE HEARING

The following summarizes the testimony of Ms. Skipper and VE Deborah A. Lee, presented during the hearing before the ALJ.

Ms. Skipper testified she is unable to work due to her lumbar degenerative disc disease; she otherwise denied that her right ankle contributes to her alleged disability. (Tr. 37). Ms. Skipper asserts she has spinal arthritis, low back muscle spasms, and a swollen disc, causing pain and making it difficult for her to work even on a part-time basis. (*Id.*). She sometimes has trouble with bending due to back pain. (Tr. 38). Ms. Skipper has a prescription for muscle relaxants but does not take it often because the drug causes nausea. (Tr. 39). Ms. Skipper testified she can remain on her feet for three hours before she must rest, walk about one block at a time, and lift up to 25 pounds. (Tr. 38). Due to pain, Ms. Skipper often sleeps sitting up, propped up by pillows. (*Id.*). Because Ms. Skipper's pain affects her ability to sleep, she takes naps and dozes during the day. (*Id.*).

Ms. Skipper endorsed suffering from migraines about once or twice a month. (Tr. 39). She denied awareness of any known triggers for her migraines, including light and sound. (*Id.*).

The VE then testified. The VE characterized Ms. Skipper's past relevant work as a sales clerk (DOT 290.477-014), light generally, medium as actually performed, SVP 3. (Tr. 40-41). The ALJ asked if a hypothetical individual of Ms. Skipper's age, education, and work history could

perform Ms. Skipper's past relevant work if limited to light exertion work and subject to additional

limitations, including:

> no climbing ladders, ropes or scaffolds, [INAUDIBLE]. No climbing of ramps and
> stairs, balancing, stooping, kneeling, crouching, and crawling. No concentrated
> exposure to hazards such as heights, machinery, commercials, [INAUDIBLE]. Or
> constant exposure to vibration and [INAUDIBLE] pollutants, high background
> noise, or industrial lighting, as in a factory setting.

(Tr. 41). The VE determined such an individual could perform Ms. Skipper's past relevant work

and identified other light exertion, unskilled positions available, including mail clerk (DOT

209.687-026; 66,000 jobs available nationally), cafeteria attendant (DOT 311.677-010; 143,000

jobs available nationally), and merchandise marker (DOT 209.587-034; 90,000 jobs available

nationally). (Tr. 41-42). If the individual was further limited to walking and standing for a total of

two hours in an eight-hour workday, the individual would not be able to perform Ms. Skipper's

past relevant work or any of the other jobs the VE identified. (Tr. 42-43). Additionally, an

individual who is off task more than twenty percent of the workday would be unable to sustain

competitive employment. (Tr. 42).

## V.    OTHER RELEVANT EVIDENCE

On October 12, 2018, Ms. Skipper spoke with a Social Security Administration (SSA)

representative regarding her activities of daily living. (Tr. 291). She informed the representative

that she has arthritis in her low back and experiences muscle spasms. (*Id.*). Ms. Skipper reported

she did not need a walking aid, but can sit and stand for only thirty minutes at a time and can

walk only a block or two. (*Id.*). Ms. Skipper can shower and dress herself, but her daughter helps

her with grocery shopping, cooking, cleaning, and laundry. (*Id.*). She indicated she does not see

friends often but sees family once or twice a week. (*Id.*).

Ms. Skipper also completed an Adult Function Report for the SSA. (Tr. 294-301). Ms. Skipper endorsed arthritic back pain that limits her to sit or stand for just thirty to forty minutes at a time. (Tr. 294). The pain sometimes makes it difficult to turn over in bed at night, bend over, or get out of bed. (*Id.*). Ms. Skipper mostly showers because exiting the bathtub can be difficult. (Tr. 295). She can do her hair but can only hold her hands over her head for a few minutes at a time. (*Id.*). On a typical day, Ms. Skipper can get dressed (which sometimes takes longer to do), work for four or five hours, eat dinner, watch television, and prepare for bed. (*Id.*). Sometimes, back discomfort keeps Ms. Skipper awake for most of the night. (*Id.*).

Two or three times a week, Ms. Skipper prepares small, quick meals for herself, which takes about twenty to thirty minutes. (Tr. 296). Ms. Skipper used to be able to prepare large meals, such as for holidays, but now is unable to do so because of the amount of time spent standing. (*Id.*). She can wash dishes, dust, and do some ironing, which takes about thirty minutes, but does not do any outdoor work because it is strenuous on her back. (Tr. 296-97). Ms. Skipper does not have a driver's license. (Tr. 297). She shops by mail and in stores "maybe twice a week," which takes about thirty to forty minutes. (*Id.*).

Before her alleged disability, Ms. Skipper could take walks, work more than four hours a day, stand for longer periods of time, and navigate stairs. (*Id.*). She enjoys playing cards and watching television. (Tr. 298). She participates in these activities for shorter periods of time now because she cannot sit for a long time. (*Id.*). She talks with her family, mostly by phone, about four times a week. (*Id.*). She continues to work part-time, about every other day. (*Id.*). Ms. Skipper is unable to go out and dance or take walks like she used to. (Tr. 299). She can walk for about half a block before she needs to rest for two to three minutes. (*Id.*).

THE ALJ'S DECISION

The ALJ's decision, dated April 10, 2020, included the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2.    The claimant has not engaged in substantial gainful activity since October 1, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: degenerative arthritis of the spine, migraine, degenerative changes to the right ankle, status post sprain/strain; and obesity (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (20 CFR 404.1545 and 416.945) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except for the following additional limitations: she cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; and she cannot have concentrated exposure to hazards (heights, machinery, and commercial driving), vibration, environmental pollutants, high background noise, or industrial noise, as in a factory setting (20 CFR 404.1569a and 416.969a).

6.    The claimant is capable of performing past relevant work as a Sales Clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.    In addition to past relevant work, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform, considering the claimant's age, education, work experience, and residual functional capacity (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a). Therefore, the Administrative Law Judge makes the following alternative findings for step five of the sequential evaluation process.

8.      The claimant was born on February 2, 1967 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

9.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2017, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 22-27).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *see also Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).

In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh

the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security,* 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted). Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by

11

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) and 416.920(b)-(f); *see also Walters,* 127 F.3d at 529.

DISCUSSION

Ms. Skipper claims the ALJ erred by failing to evaluate the medical opinion of PA Shank in accordance with the regulations. (Pl.'s Br., ECF #11, PageID 583). More specifically, Ms. Skipper claims the ALJ did not comply SSA's own rules and regulations "when he improperly rejected the only medical opinion rendered by a source who examined" her. (*Id.*). Ms. Skipper grounds this claimed error in the ALJ's mischaracterization of the medical evidence (that the opinion "appears to be based on the claimant's subjective allegations of unexplained right upper extremity limitations, which is not otherwise documented objectively or in the medical record") and the single-sentence assessment of PA Shank's opinion that did not articulate how the ALJ considered the supportability or consistency of the medical opinion; in short, a failure to build an accurate and logical bridge between the evidence and the result. (*Id.* at PageID 583-84). The Commissioner responds that the ALJ properly found PA Shank's opinion unpersuasive and "sufficiently identified the evidence that supported his conclusion." (Comm'r's Br., ECF #12, PageID 599). The Commissioner also rejects Ms. Skipper's contention that the ALJ mischaracterized the evidence, claiming that PA "Shank did, in fact, attribute [Ms. Skipper's] symptoms in part to lateral epicondylitis." (*Id.* at PageID 600).

Ms. Skipper filed her applications after March 27, 2017, and therefore, new regulations govern the evaluation of medical opinions. *See* 20 C.F.R. §§ 404.1520c; 416.920c. Under those regulations, an ALJ is no longer required to defer to or give specific evidentiary weight to a medical opinion, is not bound by the "treating physician rule," and is not required to give a treating source controlling weight. *Id.* §§ 404.1520c(a), 416.920c(a); *see also Jones v. Comm'r of Soc. Sec.*, No. 19-1102, 2020 WL 1703735, at *2 (N.D. Ohio Apr. 8, 2020). Rather, an ALJ must evaluate the

13

persuasiveness of all medical opinions using the factors set forth in the regulations: (1) supportability;[1] (2) consistency;[2] (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5). Supportability and consistency are the two most important factors guiding the ALJ's decision. *Id.* at §§ 404.1520c(b), 416.920c(b). An ALJ "will explain how [he] considered the supportability and consistency factors," but is only required to articulate how he considered the other factors when he finds that two or more opinions on the same issue are equally well-supported and consistent with the record but are not exactly the same. *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

These regulations demand less of an ALJ than the former rules governing the evaluation of medical opinions, but "they still require the ALJ to provide a coherent explanation for [his] reasoning." *Lester v. Saul*, No. 20-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted*, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). As one district court within the Sixth Circuit explained:

---

[1] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416c(c)(1).

[2] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

14

The new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 20-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01 (2017)). An "ALJ's failure ... to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [claimant's] disability determination was supported by substantial evidence." *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021).

*Hardy v. Comm'r of Soc. Sec*, No. 20-10918, 554 F. Supp. 3d 900, 907 (E.D. Mich. Aug. 13, 2021).

Ultimately, the role of the ALJ is to articulate how he considered medical opinions and how persuasive he found them . *Holston v. Saul*, No. 1:20-CV-1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, , 2021 WL 1863256 (N.D. Ohio May 10, 2021). The role of the court is not to reweigh the evidence, but to make sure the ALJ employed the proper legal standard by considering the factors and supported the conclusion with substantial evidence. *Id.* at *14.

In an October 3, 2019 treatment record, Ms. Skipper complained to PA Shank of weakness and numbness in her right arm, but physical examination revealed "normal strength" and "[n]o . . . sensory deficit. (Tr. 484). Before PA Shank offered an opinion regarding functional limitations posed by Ms. Skipper's back issues, and in response to a question on the medical opinion form, PA Shank listed all the medical problems for which Rockside MC has ever seen Ms. Skipper, dating back to 2008, including lateral epicondylitis (more commonly known as tennis elbow). (Tr. 441). PA Shank did not indicate which elbow, left or right, was treated for lateral epicondylitis, nor do any other available medical records. Thereafter, she explicitly based her medical opinion on a 2018 X-ray revealing degenerative changes and spinal arthritis within normal limits, a 2008 MRI, and physical examination findings showing tenderness at the L4 and L5 vertebrae and decreased range of motion on extension and flexion of the lumbar spine. (Tr. 442).

The ALJ provided an overview of the evidence and addressed PA-C Shank's opinion as follows:

> The claimant testified that her back pain has bothered her for several years, resulting in pain and back spasms. She said that she could not perform her past work as a sales clerk as she was once able. She said that she could lift and carry 20 to 25 pounds maximum. She testified that she could only stand for three hours at a time before she needed to sit. She could walk only a block before needing to sit. She testified that bending to lift something off the floor bothered her sometimes. She testified that she had physical therapy approximately seven years ago. She takes muscle relaxers for her pain, but she denied any side effects except nausea, which limited her compliance with the medication. She did not return to her primary care physician Dr. Boose for medication adjustments.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> Physically, the undersigned finds that the sporadically-treated effects of her chronic low back pain secondary to mild degenerative changes in her lumbar spine and residual effects from a right ankle non-fracture injury that she sustained in July 2018, have restricted her to a reduced range of light work with additional nonexertional postural limitations to the extent described in this finding.
>
> Objective physical examination findings on October 3, 2019 establish a positive straight-leg-raising test result bilaterally, but otherwise no evidence of gait problems. Additionally, the claimant's examining physician Bryan [sic] Myers, M.D., and his physician assistant observed that the claimant had unexplained right upper extremity weakness and numbness, which restricted her to pushing and pulling weights consistent with light work.
>
> The undersigned is not persuaded by the medical opinion that acknowledged secondarily by Dr. Myers, because it appears to be based on the claimant's subjective allegations of unexplained right upper extremity limitations, which is not otherwise documented objectively or in the medical record.

(Tr. 23-24) (internal citations omitted).

16

As is evident, the ALJ made no explicit reference to the supportability or consistency factors. The ALJ determined PA Shank's opined restriction for pushing and pulling was based on the PA's observation of right arm weakness and numbness and found the opinion unpersuasive because "it appears to be based on Ms. Skipper's subjective allegations of unexplained right upper extremity limitations." *Id.* This statement, if true, could be characterized as addressing the supportability of PA Shank's opinion. But, contrary to the ALJ's decision, the record is plain that PA Shank neither observed right arm weakness or numbness, nor did she base any of her opinions on Ms. Skipper's subjective allegations of right upper extremity weakness. The ALJ's written decision does not acknowledge that PA Shank supported her opinions with this evidence (and not the findings on examination that day), but instead characterizes the basis for the medical opinion in a manner that is not supported by the record. "Supportability depends on the reasons actually given by the medical source, not those the ALJ imputes on her." *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, *7 (N.D. Ohio June 3, 2021), *report and recommendation adopted*, 2021 WL 2530846 (N.D. Ohio June 21, 2021).

The Commissioner points to the ALJ's earlier analysis of the medical records and other evidence, including Ms. Skipper's testimony at the hearing, the sporadic nature of her treatment, and the state agency reviewing physician opinion that Ms. Skipper is capable of standing and walking six hours in an eight-hour day, claiming these references to evidence throughout the written decision are substantial evidence supporting the ALJ's conclusion that PA-C Shank's opinion is unpersuasive. (Comm'r's Br., ECF #12, PageID 599). However, the ALJ's written decision also refers to portions of the record that could logically support a finding that PA Shank's opinion is persuasive, including a bilateral positive straight leg raising test, Ms. Skipper's reduction

to part-time work to accommodate her back pain, and her body mass index. (Tr. 23-24). Additional evidence, including decreased range of motion in the lumbar spine (Tr. 484), could also support a finding that the opinion is persuasive, though this was not mentioned in the ALJ's written decision. It bears repeating that a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d at 877 (internal quotations omitted).

Ultimately, the Commissioner's argument regarding substantial evidence is unpersuasive. Because the ALJ's summary of evidence includes both supportive and contradictory information, it does little to explain the ALJ's reasoning or to provide sufficient rationale for the reviewing court. *See Hardy v. Comm'r of Soc. Sec*, No. 20-10918, 554 F. Supp. 3d 900, 907 (E.D. Mich. Aug. 13, 2021). Moreover, as the Sixth Circuit explained in *Wilson*:

> A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. "[A] procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway." *Mazaleski v. Treusdell*, 562 F.2d 701, 719 n. 41 (D.C. Cir. Apr. 26, 1977); *see also Ingalls Shipbuilding, Inc. v. Dir., Office of Workers' Comp. Programs*, 102 F.3d 1385, 1390 (5th Cir.1996). To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with § 1527(d)(2), would afford the Commissioner the ability to violate the regulation with impunity and render the protections promised therein illusory. The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to "set aside agency action ... found to be ... without observance of procedure required by law." Administrative Procedure Act, 5 U.S.C. § 706(2)(D) (2001).

*Wilson*, 378 F.3d at 546. Although *Wilson* addressed application of the treating physician rule, its reasoning "applies with equal force to the new regulations, which require explanations for determinations that a medical opinion is unpersuasive. Because of the greater latitude afforded

ALJs under the new regulations, the importance of cogent explanations is perhaps even more important." *Hardy,* 554 F. Supp. 3d at 908. Moreover, , even if substantial evidence supported the ALJ's finding that PA Shank's opinion was unpersuasive, "'substantial evidence alone does not excuse non-compliance with [the regulations] as harmless error.'" *Ledsome v. Comm'r of Soc. Sec.,* 5:20-CV-02495, 2021 WL 6101427, *7 (N.D. Ohio Dec. 8, 2021), *report and recommendation adopted,* 2021 WL 6086452 (N.D. Ohio Dec. 23, 2021) (quoting *Hardy,* 554 F. Supp. 3d at 908).

A court may conclude an ALJ's procedural error was harmless in some circumstances, including for example, when an opinion is so patently deficient that the Commissioner could not possibly credit it, the Commissioner adopts a treating source opinion or makes findings consistent with the opinion; and (3) the Commissioner has met the goal of the regulations even without complying with its terms. *Wilson,* 378 F.3d at 547; *see also Hardy,* 554 F. Supp. 3d at 909 (applying *Wilson's* harmless error doctrine to an ALJ's failure to evaluate medical opinions properly under 20 C.F.R. § 404.1520c(b)); *accord Moulden v. Kijakazi,* No. 1:20-CV-00152, 2022 WL 178588, *7 (W.D. Ky. Jan. 19, 2022). Here, the Commissioner argues the ALJ did not err in evaluating the medical opinion at issue. (Comm'r's Br., ECF #12 at PageID 599). The Commissioner does not argue that the ALJ's error, if any, was harmless. I find none of the harmless error circumstances exist in this case; therefore, the ALJ's failure to evaluate the medical opinion appropriately and adequately articulate his reasons for finding the opinion unpersuasive is not harmless error.

First, the opinion is not so patently deficient that the ALJ could not have possibly credited it at all. PA Shank offered some explanatory analysis, and at least some of the objective medical evidence in the record appears to support her opinion, including limited lumbar range of motion, an X-ray confirming spinal arthritis, tenderness to palpation of the back, and vertebral tenderness

at L4 and L5. *See Dobbins v. Comm'r of Soc. Sec.,* 2019 WL 1054552, *6 (S.D. Ohio Mar. 6, 2019), *report and recommendation adopted,* 2019 WL 1455476 (S.D. Ohio Apr. 2, 2019); *see also Perry v. Acting Comm'r of Soc. Sec.,* No. 17-cv-13386, 2019 WL 759289, *6 (E.D. Mich. Jan. 23, 2019).

The second harmless error circumstance does not apply here because the Commissioner did not adopt the opinion and did not make findings consistent with the opinion. Finally, the ALJ did not meet the goal of the present regulation, which shares the old regulation's goals:

> "to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied and to ensure that the ALJ's decision permits meaningful review of the ALJ's application of the rule."

*Burba v. Comm'r of Soc. Sec.,* No. 2:18-cv-725, 2020 WL 5792621, *4 (N.D. Ohio Sept. 29, 2020) (quoting *Wilson,* 378 F.3d at 544). The ALJ did not meet the goal of the regulations; the opinion does not offer any justifiable reasoning for finding the medical opinion unpersuasive, nor does it permit meaningful review of the ALJ's application of the regulations.

I recognize the potential that a remand may not change the ultimate outcome of this case. Nevertheless, I conclude Ms. Skipper is entitled to remand because the ALJ did not comply with procedural regulations and the error is not harmless. On remand, the ALJ should re-evaluate PA Shank's medical opinion under proper application of the regulations and reassess Ms. Skipper's RFC.

### CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I recommend the District Court **REVERSE** the Commissioner's decision denying disability

insurance benefits and supplemental security income and **REMAND** this matter for proceedings consistent with this recommendation.

Dated: July 15, 2022

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### OBJECTIONS, REVIEW, AND APPEAL

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge.** *See* **Fed. R. Civ. P. 72(b)(2);** *see also* **28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation.** *Berkshire v. Dahl,* **928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object."** *Howard v. Sec'y of Health and Hum. Servs.,* **932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'"** *Overholt v. Green,* **No. 1:17-CV-00186, 2018 WL 3018175, at \*2 (W.D. Ky. June 15, 2018) (quoting** *Howard,* **932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice.** *See United States v. Wandahsega,* **924 F.3d 868, 878-79 (6th Cir. 2019).**